**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION**

| | | |
|---|---|---|
| STATE OF GEORGIA | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| ERIC HEINZE, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF REMOVAL OF CRIMINAL ACTION TO FEDERAL COURT

Pursuant to 28 U.S.C. §§ 1442 and 1455, Defendant Eric Heinze ("Defendant" herein), through counsel, LoRusso Law Firm, PC, hereby removes this action from the Superior Court of Fulton County to the United States District Court for the Northern District of Georgia, Atlanta Division.  Copies of all process, pleadings, and orders served upon United States Marshal Assistant Chief Inspector Eric Heinze (Inspector Heinze) are attached as Exhibits A and B, pursuant to 28 U.S.C § 1455.  In support of its notice, Defendant states the following:

## I.    __Background__

The United States Marshals Southeast Regional Fugitive Task Force, (hereinafter "Marshal's Task Force") is a law enforcement unit operated by the United States Marshal's Service. First created in 2003, the Marshal's Task Force operates out of Macon, Atlanta, Savannah, and Albany and utilizes the resources of

the United States Marshal's Service and over twenty state and local law enforcement agencies serving the areas covered by the Northern, Middle, and Southern Districts of Georgia. This Task Force serves the entire State of Georgia.

The Marshal's Task Force sole mission is the service of state and local warrants upon request of state or local law enforcement agencies although all are authorized to apprehend those wanted on federal warrants as well. All members of the Marshal's Task Force are Deputy United States Marshals and federal officers either by virtue of their employment or special deputization.

The United States Marshal's Service (hereinafter "USMS") is the lead agency for fifty-six interagency fugitive task forces located throughout the United States, as well as eight Congressionally-funded regional fugitive task forces pursuant to the Presidential Threat Protection Act of 2000.  See P.L. 106-544 December 19, 2000 114 STAT 2715. Exhibit C (attached for the convenience of this Court) These task forces, staffed by federal, state, and local law enforcement agencies, target the most dangerous fugitives. The majority of the task forces are full-time efforts; however, additional task forces are formed on an ad-hoc basis, in response to specific cases. Funding for these task forces is often granted through initiatives such as the High Intensity Drug Trafficking Area (HIDTA), Organized Crime and Drug Enforcement Task Forces (OCDETF), and Project Safe Neighborhoods

(PSN) task forces. The USMS also operates Regional Fugitive Task Forces in New York/ New Jersey, Pacific Southwest, Great lakes, Southeast, Capital Area, Gulf Coast, and Florida/ Caribbean locations.

On August 5, 2016, the Defendant[1] and other members of the Marshal's Task Force attempted to serve three felony arrest warrants upon Jamarion Robinson (deceased). Jamarion Robinson was wanted pursuant to felony warrants for Attempted Arson and Aggravated Assault on two Law Enforcement Officers. The former charges stemmed from Mr. Robinson's efforts to set his home on fire with his mother inside. The second from his actions in pointing a firearm at two uniformed City of Atlanta Police Officers. See Exhibit D. The warrants for the Mr. Robinson were presented to the Marshal's Task Force by a member of the City of Atlanta Police Department. Due to the violent nature of the crimes, the Marshal's Task Force accepted the warrants and began the process of investigating and locating Mr. Robinson. Members of the Marshal's Task Force established the location of Mr. Robinson, positively identified him, confirmed his location inside the residence at 3129 Candlewood Drive SW Apartment D East Point, GA, and,

---

[1] On August 5, 2016, Defendant held the rank of Inspector within the United States Marshals Service. He currently holds the rank of Deputy Chief Inspector, is the second in command of the Marshal's Task Force, and has been promoted in rank since this incident.

following a standard briefing, assembled the resources typically used by the Marshal's Task Force to apprehend a wanted fugitive. Said resources included, as always, marked police vehicles, raid vests identifying Marshal's Task Force Members as law enforcement officers marked "POLICE" and MARSHALS", and a ballistic shield with the words "US MARSHALS" and "POLICE" printed in large letters on the front of the shield.

Upon arrival at the apartment, the officers identified Jamarion Robinson and proceeded to execute the standard "knock-and-announce" warrant service. The officers made several unsuccessful efforts to communicate with the suspect in an effort to convince him to exit the residence and surrender. After hearing movement within the apartment, the officers breached the front door and provided further commands to the suspect. Jamarion Robinson was upstairs and task force members observed him coming down the stairs with a gun in hand, aimed at the Defendant and other task force members who were gathered in the doorway attempting to use the ballistic shield for cover. When Robinson failed to follow the verbal commands of task force members to drop the gun, the Defendant protected himself and his task force members by firing at the suspect in an attempt to eliminate the threat. Robinson fired his gun at least twice towards the officers. While still refusing to surrender, after being given multiple chances to, he eventually succumbed from his

4

wounds.

On January 10, 2018, a Civil Complaint, Complaint 1:18-cv-0131-TCB, was filed against officers William Sauls, Steve Schreckengost, Steve O'Hare, Fulton County, Daniel Doyle, Kristopher Hutchens, Daniel Durand, Fayette County, Joshua Mauney, Eric Heinze, John Doe aka "TEZ," City of East Point, John Doe East Point Georgia Police Officers 1-10, for one count of Claim for Excessive Force, one Count for Claim for Failure to Intervene, one Count for Claim for Conspiracy, one Count for Bivens Claim against the Defendant Eric Heinze, one Count for State Law Claim for Conspiracy, one Count for State Law Claim for Battery, and one Count for Wrongful Death. See Exhibit E.

On March 9, 2021, the Acting United States Attorney for the Northern District of Georgia, Kurt Erskine, by virtue of the authority vested in him by the Assistant Attorney General, certified that the Defendants referred to in the Complaint 1:18-cv-0131-TCB, were acting within the scope of their employment as employees of the United States Government at the time of the events alleged in said Complaint. See Exhibit F.

On March 30, 2021, the Honorable Timothy C. Batten, Sr., United States District Judge, granted the Defendant's Motion for Summary Judgment finding that Defendants were acting as federal officers, their actions comported with

Georgia law, and they were entitled to qualified immunity. Judge Batten confirmed

his ruling in response to a Motion for Reconsideration. Exhibits G (Judgment), H

(Order Dated March 4, 2021) & I (Order dated March 30, 2021). Plaintiff's appeal

is pending in the Eleventh Federal Court of Appeals.

On September 29, 2021[2], Inspector Heinze received a Grand Jury notice by

the Fulton County District Attorney, Fani T. Willis, informing him that evidence

was being considered against him for the offenses of two counts of Felony Murder

(O.C.G.A § 16-5-1); one count of Aggravated Assault with a Deadly Weapon

(O.C.G.A § 16-5-21); one count of Burglary in the First Degree (O.C.G.A § 16-7-

1(b)); one count of False Statement (O.C.G.A § 16-10-20); and one count of

Violation of Oath of Office By Public Officer (O.C.G.A § 16-10-1). On October

26, 2021, a Fulton County Grand Jury returned a True Bill on all above-named

counts. See Exhibit A.

---

[2] A prior effort to bring an indictment against Deputy Chief Inspector Heinze in
relation to the death of Jamarion Robinson was begun in 2019 by then Fulton
County District Attorney Paul Howard. Howard withdrew the notice and
abandoned the effort. The August 2, 2016 incident became a fixture in the political
campaign between Howard and current District Attorney Fani Willis who defeated
Howard.

## II.    GROUNDS FOR FEDERAL OFFICER REMOVAL UNDER 28 U.S.C. § 1442

"Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Willingham*, 395 U.S. at 407. The federal removal statute permits removal of any "criminal prosecution that is commenced in a State court" against "any officer…of the United States or the agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals." 28 U.S.C. § 1442(a)(1).  The removal statute "grant[s] district court jurisdiction over cases in which a federal officer is a defendant." *Mesa v. California*, 489 U.S. 121, 136 (1989). The statute is mandatory. City of Norfolk, Va. v. McFarland, 143 F. Supp. 587, 589 (E.D. Va. 1956).

"[T]he removal statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations' that would ensue were a State able, for example, to 'arres[t]' and bring 'to trial in a State cour[t] for an alleged offense against the law of the State,' 'officers and agents' of the Federal Government 'acting ... within the scope of their authority.'" Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 150, 127 S. Ct. 2301, 2306, 168 L. Ed. 2d 42 (2007).

As Justice Blackmun held, "This principle is entirely consistent with the purpose underlying the removal of proceedings commenced in state court against a federal officer. Historically, removal under § 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties. The act of removal permits a trial upon the merits of the state-law question free from local interests or prejudice. See *Colorado v. Symes*, 286 U.S. 510, 517-518, 52 S.Ct. 635, 637, 76 L.Ed. 1253 (1932); *Maryland v. Soper*, 270 U.S. 9, 32, 46 S.Ct. 185, 190, 70 L.Ed. 449 (1926). It also enables the defendant to have the validity of his immunity defense adjudicated, in a federal forum. *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969). For these reasons, this Court has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).' *Ibid.* Arizona v. Manypenny, 451 U.S. 232, 241–42, 101 S. Ct. 1657, 1664, 68 L. Ed. 2d 58 (1981).

To qualify for removal, a defendant need only show (1) that the conduct concerns actions undertaken as a federal officer, (2) "that the suit is 'for a[n] act under color office,'" and (3) "raise a colorable federal defense." *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999) (quoting 28 U.S.C. §

1442(a)(3)). The notice of removal must simply contain "a short and plain statement of the grounds for removal." 28 U.S.C. § 1455(a).

In considering the issue, the Court should enter an order for summary remand only where it "clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted." 28 U.S.C. § 1455(b)(4). Otherwise, "it shall order an evidentiary hearing to be held promptly and, after such hearing, shall make such disposition of the prosecution as justice shall require." 28 U.S.C. § 1455(b)(5). If removal is permitted, the Court "shall so notify the State court in which prosecution is pending, which shall proceed no further." 28 U.S.C. § 1455(b)(5).

### A.     Inspector Heinze is an Officer of the United States.

Inspector Heinze has served as a Deputy with the United States Marshals Service (USMS) since 2005. He started to assist the USMS Southeast Regional Fugitive Task Force in 2011, where his primary responsibilities were solely assisting state and local law enforcement agencies arrest their most violent fugitives; local agencies such as the Fulton County Sheriff's Office and the City of Atlanta Police Department and in forty-six other counties within the Northern District of Georgia.

9

*Ab initio*, Inspector Heinze notes that Judge Batten found as a matter of law that the Acting United States Attorney for the Northern District of Georgia had certified that Inspector Heinze was acting with the course and scope of his employment at all times relevant to this matter. See F (March 30, 2021 Order) & G (March 4, 2021 order).

B.       **Inspector Heinze was Acting "Under Color of his Office."**

The test for whether a federal officer was acting under color of his office is not onerous.  The removal statute requires a "causal connection between what the officer has done under asserted official authority and the state prosecution." *Soper*, 270 U.S. at 33. All this requires is that "his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution." *Id.* In addition, the removal statute permits a law enforcement officer to show he acted "under the color of his office" if he acts to protect another person from an act of violence, provides assistance to someone threatened with bodily harm, or acts to prevent the escape of someone he reasonably believed had committed, or was about to commit, a crime of violence causing serious bodily injury. 28 U.S.C. § 1442(c).

In determining whether the defendant was acting under "color of his office," a court credits the removing party's theory of the case, rather than

deciding the merits of the underlying case for jurisdictional purposes. *See Jefferson County*, 527 U.S. at 432.

### 1. Inspector Heinze was Performing his Official Duty.

On August 5, 2016, Inspector Heinze was advised by another task force officer from the Atlanta Police Department of two Fulton County arrest warrants for Mr. Jamarion Robinson, and his agency was requesting the assistance of the USMS in serving these warrants. Before agreeing to assist, the USMS ensured that the assigned case agent provided a detailed description of the circumstances of the case, the investigation itself, and proper tactical assignments to take at the time of the warrant service.

During the briefing, we were all advised the two warrants were for the arrest of Mr. Robinson who was charged with two counts of aggravated assault on Atlanta Police Officers and an Attempted Arson stemming from an incident where Mr. Robinson was charged with pouring gasoline on the floor outside of his mother's bedroom and attempting to ignite it while she was in the room. The case agent also informed USMS that Mr. Robinson has become increasing unstable due to a possible mental health issue. These facts, along with his prior criminal acts which were forcible felonies under Georgia law, convinced USMS that Mr. Robinson was a dangerous fugitive who would likely try to shoot or kill

any law enforcement officer he encountered. This is the exact type of circumstance that the USMS task force was established to assist with.

Mr. Robinson was positively identified at the apartment complex, members of the USMS task force established intelligence confirming that he occupied the residence on a regular basis, and police officers had discreetly surrounded the apartment to observe if Mr. Robinson departed. Inspector Heinze was assigned the responsibility for holding the ballistic shield and being the first person through the doorway if an entry was made. Officers knocked and announced "Police, come to the Door" several times on the front door in which no response was given. After several attempts, receiving no answer, with a valid criminal arrest warrant, and positive knowledge Mr. Robinson was inside the apartment, officers breached the front door of the apartment.

As the front door opened, all officers continued to stay outside the apartment and announce "Police, come to the front door." As the officers continued to announce for Mr. Robinson to come to the door, they heard some noise on the second floor. The officers observed a set of feet at the top of the stairs and advised other officers there was a person at the top of the stairs. Inspector Heinze advised Mr. Robinson they could see him and to come to the front door slowly with his hands above his head nice and slow. As they

continued to address Mr. Robinson to walk down the stairs, they could observe

him taking one stair at a time in a very slow fashion. As Mr. Robinson was

approximately four steps down, they could see both of his arms outstretched in

front of him with the palms of his hands together holding something. Inspector

Heinze immediately advised other officers that Mr. Robinson was holding

something in his hands. Within seconds, the officers were able to identify the

item in Mr. Robinson's hands was indeed a firearm. With Mr. Robinson failing

to place his hands in the air as instructed and the firearm pointed directly at

Inspector Heinze and the other officers, Inspector Heinze acted in self-defense

and fired several rounds one handed while the other hand was holding the

shield. After firing at Mr. Robinson, he retreated back upstairs and out of view

of law enforcement. All shooting stopped and verbal commands were

immediately given for Mr. Robinson to put down the gun and come down stairs

with his hands up. Mr. Robinson then reappeared at the top of the stairs holding

the firearm and pointing it at the officers again. Officers began to continue fire

at Mr. Robinson. After the exchange of gun fire, Mr. Robinson fell on the

ground at the top of the stairs and the gun was no longer visible. All firing by

law enforcement stopped and verbal commands were again given to Mr.

Robinson to show his hands. While Mr. Robinson was on the ground, the entry

team moved inside the apartment to the very base of the stairs to gain a better

view of Mr. Robinson and the firearm. While at the base of the stairs, law

enforcement continued to give verbal commands to show his hands. Mr.

Robinson raised his arm and was still holding the firearm and pointing it at

police. This forced officers to fire again at Mr. Robinson. Mr. Robinson

slumped back over on the ground resulting in the weapon no longer being

pointed at law enforcement so all shooting stopped and verbal commands began

again.

Once Mr. Robinson was no longer attempting to point the firearm at law

enforcement officers, the officers deployed a non-lethal diversionary device at

the top of the stairs, commonly referred as a flash bang. The flash bang went off

and Mr. Robinson did not move. One Task force member went to his vehicle

and retrieved a "throw bot," activated it, then deployed it by tossing it near

Robinson in an effort to use the integral camera to observe Robinson and

determine the location of Robinson's gun. Using the throw bot, the officers were

able to determine that Robinson was no longer holding his gun. The officers

then cleared the bottom floor of the apartment to create a safe area to provide

medical attention. Within seconds, the bottom of the apartment was cleared and

the officers slowly began to walk upstairs to secure Mr. Robinson in order to

provide immediate medical aid. As they slowly approached Mr. Robinson, they

could see the gun at the top of the stairs and away from Mr. Robinson's hands.

Once he was clear from the weapon, Mr. Robinson was searched, and brought

downstairs and immediately treated by our certified tactical medic as well as

emergency medical personnel. The remainder of the apartment was secured and

cleared.

It is beyond dispute that Inspector Heinze was performing his official

duties as a federal officer when pursuing and attempting to stop Mr. Jamarion

Robinson. Further, Judge Batten so held as a matter of law and dismissed the

prior, related civil case on March 30, 2021. See Exhibits G (Judgment dated

March 30, 2021), H (Order dated March 4, 2021), and I (Order dated March 30,

2021).

### C. Inspector Heinze has a Colorable Federal Defense of Immunity Under the Supremacy Clause of the United States Constitution.

The final requirement for removal is the averment of a colorable federal

defense. *See Mesa,* 489 U.S. at 129. Under the Supremacy Clause of the U.S.

Constitution, federal officers are immune from state prosecution if "(1) the

federal agent was performing an act which he was authorized to do by the law of

the United States and (2) in performing that authorized act, the federal agent did

no more than what was necessary and proper for him to do." *Kentucky v. Long*,

837 F.2d 727, 744 (6th Cir. 1988).  For an act to be "necessary and proper," "two

conditions must be satisfied: (1) the actor must subjectively believe that his

action is justified; and (2) that belief must be objectively reasonable." *New York*

*v. Tanella*, 374 F.3d 141, 147 (2d. Cir. 2004) (citing *Whitehead v. Senkowski*,

943 F.2d 230, 234 (2d. Cir. 1991)). Courts must "evaluate the circumstances as

they appear to [the] federal officer [] at the time of the act in question, rather

than the more subtle and detailed facts later presented to a court." *Wyoming v.*

*Livingston*, 443 F.3d 1211, 1229 (10th Cir. 2006). Importantly, the removal

statute "is broad enough to cover all cases where federal officers can raise a

colorable defense arising out of their duty to enforce federal law." *Mesa*, 489

U.S. at 133 (quoting *Willingham*, 395 U.S. at 409). "The officer need not win his

case before he can have it removed." *Willingham*, 395 U.S. at 407.

In pursuing and attempting to apprehend Mr. Robinson and while

attempting to protect himself and other officers on the scene from the threat of

serious bodily harm, Inspector Heinze was clearly performing acts he was

authorized to do as a federal police officer. See 18 U.S.C.A. § 3053. Moreover,

Inspector Heinze reasonably believed that his actions were justified in carrying

out his federal duties. In fact, Judge Batten found as a matter of law that

Inspector Heinze acted within the law and that his actions were justified under Georgia law, specifically O.C.G.A. §16-3-21 and was therefore entitled to immunity[3] from civil liability pursuant to O.C.G.A. §51-11-9. As such, Inspector Heinze has asserted a colorable federal defense, and has fulfilled the third and final requirement for removal under § 28 U.S.C 1442(a). Inspector Heinze also has a colorable defense under state law per O.C.G.A. §16-3-20 and O.C.G.A. §16-3-23.1. It should also be noted, that the United States Marshals Service Shooting Review Board reviewed the events of August 5, 2016 and found that "each discharge of [Inspector Heinze's] firearm was AUTHORIZED under USMS policy" and "From all accounts of this incident, you conducted yourself in a professional, reasonable, and proper manner under very dangerous circumstances." Exhibit J.

## III. CONCLUSION

For the foregoing reasons, Inspector Heinze respectfully request that this criminal action be, and is hereby, removed to the United States District Court for the Northern District of Georgia, Atlanta Division *instanter*, that this Court enter such other and further orders as may be necessary to accomplish the requested

---

[3] O.C.G.A. §16-3-23.1 provides immunity from criminal prosecution for an individual who lawfully uses force, including deadly force, in compliance with O.C.G.A. §16-3-21.

removal and promote the ends of justice, and that the criminal action now pending in state court "proceed no further" per 28 U.S.C. §1455(b)(5).

This 28th day of October, 2021.

/s/ Lance J. LoRusso
Lance J. LoRusso
Georgia Bar No. 458023
Attorney for Defendant Eric Heinze
1827 Powers Ferry Road, SE
Bldg. 8, Ste. 200
Atlanta, Georgia 30339
Email:  lance@lorussolawfirm.com

**THIS DOCUMENT APPEARS IN TIMES NEW ROMAN 14 POINT FONT**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I electronically filed the within and foregoing with the Clerk of Court using the CM/ECF system.

This 28th day of October, 2021.

/s/ Lance J. LoRusso
Lance J. LoRusso
Georgia Bar No. 458023
Attorney for Defendant Eric Heinze
1827 Powers Ferry Road, SE
Bldg. 8, Ste. 200
Atlanta, Georgia 30339
Email:  lance@lorussolawfirm.com