# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

THE STATE OF GEORGIA,

     Plaintiff,

v.

ERIC A. HEINZE and KRISTOPHER L. HUTCHENS,

     Defendants.

Civil Action No.
1:21-cv-04457-VMC

## OPINION AND ORDER

This matter is before the Court on the State of Georgia's (the "State") Motions to Remand to State Court, and Alternatively, for an Evidentiary Hearing Pursuant to 42 U.S.C. § 1455 (Docs. 8 and 59); Defendant Heinze's Motion for Leave to File Excess Pages (Doc. 24); Defendant Heinze's Motion to Stay State Court Proceedings (Doc. 43); Defendant Heinze's Motion for Writ of *Habeas Corpus Ad Prosequendum* (Doc. 5); and the State's Motion for Leave to File Surreply to Motion to Stay Court Proceedings (Doc. 52). The Court held an evidentiary hearing on this matter on September 6, 2022, pursuant to 28 U.S.C. § 1455(b)(5). (Doc. 80). For the reasons below, the Court denies the State's Motions to Remand the criminal proceedings against Defendants.

## I.     Background

On October 26, 2021, a Fulton County, Georgia grand jury indicted Eric A. Heinze ("Heinze")[1] and Kristopher Hutchens ("Hutchens")[2] (collectively "Defendants") on criminal charges stemming from the shooting death of 26-year-old Jamarion Robinson ("Robinson"). (Doc. 1-1). The Defendants filed their notices of removal two days later, urging the Court to exercise jurisdiction over their criminal proceedings pursuant to 28 U.S.C. § 1442. (Docs. 1 and 55). In their notices, Defendants argue that they are entitled to have their cases removed to federal court because they are federal officers, and the crimes for which they are accused arose from duties performed under federal authority. At the time of Robinson's death, Heinze served as an Inspector with the United States Marshal Service ("USMS") and as a Task Force Officer ("TFO") with USMS's Southeast Regional Fugitive Task Force ("SERFTF") (Doc. 1 at 3 n.1). Hutchens was deputized as a Special Deputy U.S. Marshal through his status as a TFO with

---

[1] Heinze's charges include: two counts of felony murder, one count of aggravated assault with a deadly weapon, one count of burglary in the first degree, one count of false statements, and one count of violation of oath by public office. (Doc. 1-1).

[2] Hutchens's charges include: two counts of felony murder, one count of aggravated assault with a deadly weapon, one count of burglary in the first degree, two counts of false statements, and one count of violation of oath by public officer. (Doc. 1-1).

2

SERFTF and also an employee of the Clayton County, Georgia Sheriff's Office. (Doc. 55 at 2, 2 n.1).

## A. USMS and SERFTF

"One of the primary responsibilities of the USMS is the investigation and the apprehension of fugitives." (Doc. 80 at 44). Fugitive task forces, like SERFTF, were formally[3] created by the "Presidential Threat Protection Act of 2000," Pub. L. No. 106-544, 114 Stat. 2718 (2000). The statute requires the Attorney General of the United States to establish "permanent Fugitive Apprehensive Task Forces consisting of Federal, State, and local law enforcement authorities . . . to be directed and coordinated by the United States Marshal Service, for the purpose of locating and apprehending fugitives." 34 U.S.C. § 41503(a). A separate statute authorizes USMS officers to "investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General." 28 U.S.C. § 566(e)(1)(B).[4] A

---

[3] Additionally, Congress funded regional fugitive tasks forces that encompassed multiple federal jurisdictions and the Attorney General organized hybrid regional operations. (Doc. 80 at 44, 45).

[4] *See also* (Memorandum Opinion from the DOJ's Off. of Legal Couns. on Auth. of FBI Agents, Serving as Special Deputy to the USMS, to Pursue Non-Federal Fugitives (February 21, 1994), Doc. 25-2) ("Under 28 U.S.C. § 566(e)(1)(B), the U.S. Marshals Service ('USMS') has authority to investigate fugitive matters 'as directed by the Attorney General.' *This authority is not confined to fugitives who are sought on federal charges.* In a series of special apprehension programs authorized by three Administrations, the Attorneys General have directed the USMS and other federal agencies to engage in cooperative operations with state and local police *that encompass the investigation, pursuit, and arrest of fugitives wanted under*

USMS officer, as an officer with a fugitive task force, may exercise the same powers which a sheriff of the State may exercise in executing the laws thereof." 28 U.S.C. § 564.

SERFTF was formed in 2003. (Doc. 1 at 1). It operates throughout the state of Georgia and utilizes the resources of the USMS and supporting local law enforcement agencies. (*Id.*). The USMS has memoranda of understanding ("MOUs") with several local law enforcement agencies, including the Fulton County Police Department, Clayton County Police Department, and the Atlanta Police Department. (Docs. 8-7, 8-8, and 8-9). The MOUs codify the agreement between USMS and the local agency on administrative functions, equipment use, case adoption, and responsibilities for discipline. (Doc. 80 at 58). Because these fugitive task forces consist of officers from local law enforcement agencies, non-USMS officers are deputized as Special Deputy U.S. Marshals. *See e.g.* (Clayton Cnty. MOU, Doc. 8-8 at 2) (explaining that Clayton County officers assigned to SERFTF must undergo a background check to receive unescorted access to USMS's offices, records, and computer systems and will be deputized as Special Deputy U.S. Marshals). These specially deputized officers then have the ability "to move

---

*state as well as federal warrants*. Section 566(e)(1)(B) authorizes U.S. Marshals (including FBI agents serving as deputy marshals) to investigate and pursue fugitives wanted under state warrants whenever it is done pursuant to a special apprehension program approved by the Attorney General.") (emphasis added).

beyond their original jurisdictions in pursuit of fugitives." (Doc. 80 at 47). They are also provided with USMS equipment that can only be used when they are working on the task force. (*Id*. at 52). However, the commander of the task force as well as the three deputy commanders below the commander are all USMS employees and have direct oversight over everyone on the SERFTF, irrespective of whether they are deputy U.S. Marshals or specially deputized state and local officers. (*Id*. at 97, 152).

Once the USMS enters into a MOU with a state or local agency, it has the ability to handle state and local cases. (*Id*. at 49). A USMS task force, such as SERFTF, can "adopt" a fugitive investigation and assume responsibility for apprehending the fugitive even when the warrant being executed is issued by a state or local agency. (*Id*.). But there are criteria that must be met before an investigation is adopted, including whether the crime for which a warrant is issued is a violent or egregious felony. (*Id*. at 69-70). Once a case is adopted, it is assigned a fugitive identification number ("FID") and is considered a federal operation regardless of whether a state or local authority issues the warrant. (*Id*. at 50, 54, 58, 153).

### B. August 5, 2016

TFO Steve O'Hare ("O'Hare") requested the adoption of the Atlanta Police Department's three felony arrest warrants for Robinson. (Doc. 80 at 99). The

SERFTF commander determined that the warrants met the criteria for adoption and a FID was assigned to Robinson's case. (*Id.* at 98-99, 127-28). On August 3, 2016, O'Hare began his investigation to locate Robinson. (O'Hare Stmt., Doc. 59-2 at 2:12-2:13). This led to Heinze, Hutchens, and other members of the SERFTF attempting to arrest Robinson while he was inside an apartment on August 5, 2016. (Doc. 1 at 3). On that day, the TFOs gathered and assembled their resources, which included: marked police vehicles, raid vests marked "POLICE" and MARSHALS", and a ballistic shield with the words "US MARSHALS" and "POLICE" printed in large letters on the front of the shield. (*Id.* at 3-4*)*. The TFOs also had placards on their vests identifying them as SERFTF members. (Doc. 80 at 147).

The State alleges that one of the TFOs forcibly breached the door to the apartment "without any known or reported exigency." (Doc. 8 at 4). However, the Defendants allege that, after several unsuccessful attempts to convince Robinson to exit the apartment and surrender, and after hearing noise inside the apartment, the TFOs breached the front door and gave additional commands for Robinson to surrender. (Doc. 1 at 4). Rather than surrender, Defendants allege that Robinson came down the stairs with a gun aimed at the TFOs. (*Id.*). When Robinson ignored commands to drop his gun, the TFOs fired multiple shots. (*Id.*). Robinson allegedly fired at least two shots at the TFOs but none of the TFOs were injured. (Hutchens Stmt., Doc. 59-3 at 15:11). The shootout lasted about three minutes. (*Id.* at 20:8-

6

20:9). Once the TFOs determined that Robinson was unresponsive, they handcuffed him, and sought medical attention. (Doc. 8 at 4). However, Robinson died on the scene. (Doc. 1 at 4).

## II.    Legal Standard

A criminal prosecution against a federal officer, or any person acting under the direction of a federal officer, brought in State court, can be removed to federal court pursuant to 28 U.S.C. § 1442(a)(1). Federal courts have allowed federal officers to remove criminal prosecutions commenced against them in State court for the last two centuries. *See Willingham v. Morgan*, 395 U.S. 402, 405 (1969) (detailing the history of the federal officer removal). The purpose, as described by the Supreme Court, "is not hard to discern" because the Federal Government

> 'can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,—if their protection must be left to the action of the State court,—the operations of the general government may at any time be arrested at the will of one of its members.'

*Id.* at 406 (quoting *Tennessee v. Davis*, 100 U.S. 257, 263 (1879)). To be clear, "[s]ection 1442(a) . . . is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a

7

defendant." *Mesa v. California*, 489 U.S. 121, 136 (1989). Thus, the Court is not tasked with deciding the merits of the federal officer's claims on a motion to remand. "[T]he removal statute is an incident of federal supremacy . . . one of its purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties. *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (quoting *Willingham*, 395 U.S. at 405).

The process for removing a criminal proceeding against a federal officer is outlined in 28 U.S.C. § 1455. First, a defendant must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1455(a). The notice of removal must be "filed not later than 30 days after the arraignment in the State court . . ." 28 U.S.C. § 1455(b)(1). If it is evident on its face that removal is not appropriate, the district court "shall make an order for summary remand." 28 U.S.C. § 1455(b)(4). When a district court decides not to summarily remand a case, it is required to hold an evidentiary hearing to determine whether removal is appropriate. 28 U.S.C. § 1455(b)(5). If a district court determines removal is permitted, "it shall so notify the State court in which prosecution is pending, which shall proceed no further." *Id.*

## III.   Discussion

In its Motions to Remand, the State argues that neither Heinze nor Hutchens can meet the elements of removal under 28 U.S.C. § 1442. (Docs. 8 and 59). To

8

successfully remove a criminal prosecution under the federal officer removal statute, a defendant must show that: 1) he was an "officer, or any person acting under that officer, of the United States"; 2) he is facing criminal charges "for or relating to any act under color of such office"; and 3) that he has raised or will raise a "colorable federal defense." *Mesa*, 498 U.S. at 129; 28 U.S.C. § 1442(a). For the reasons below, the Court finds that both Heinze and Hutchens satisfy all three elements of the federal removal statute.

### A.      The Defendants Were Federal Officers

Both Heinze and Hutchens meet the first prong of the removal test because they were federal officers at the time of the shooting death of Robinson.

### i.      Heinze

The State does not dispute that Heinze is a federal officer; rather they argue that at the time of the shooting, Heinze was not acting under the color of his federal authority. (Doc. 8 at 10). Because this argument concerns the second prong of the test for determining federal officer removal, the Court will discuss this argument in more detail in the section of this Order dedicated to actions taken under the color of federal office.

### ii.      Hutchens

Though the State concedes Hutchens was a Special Deputy U.S. Marshal , it argues that Hutchens was not a federal officer at the time of Robinson's shooting

death because: 1) he was a state officer with the Clayton County Sheriff's Office;

2) he was executing a state arrest warrant issued for violating state law; 3) most of

the SERFTF officers were state officers; and 4) the MOU between the Clayton

County Sheriff's Office and USMS purportedly states that state officers should not

be considered agents of the USMS. (Doc. 59 at 10-12). Nonetheless, the Court finds

that Hutchens was both a state and federal officer at the time of Robinson's death.

As discussed above, the Presidential Threat Protection Act of 2000 required

the Attorney General to create regional fugitive task forces to assist local task

forces with apprehending fugitives.  34 U.S.C. § 41503(a). Pursuant to the MOU

between the Clayton County Police Department and the USMS, "[n]on-USMS law

enforcement officers assigned to the task force [are] deputized as Special Deputy

U.S. Marshals" and supervised by [SERFTF] Chief Inspector. (Doc. 8-8 at 2)[5]; *see*

*also* (Hutchens's "Special Deputation Oath of Office, Authorization and

Appointment" Form, Doc. 55-2).

Hutchens has been a Special Deputy U.S. Marshal since 2014. (Hutchens

Decl., Doc. 23-1 ¶ 3). On August 5, 2016, Hutchens was asked by another TFO to

---

[5] The State argues that the MOU between the Clayton County Police Department and the USMS provides that SERFTF members are neither employees nor agents of any other participating agency. (Doc. 59 at 12). But the Court agrees with the United States that this section relates to limiting the Clayton County Police Department's liability to the acts of its own employees and does not suggest that SERFTF officers are not federal officers for the purpose of removal. (Doc. 30 at 11).

assist with executing arrest warrants for Robinson, who was considered a fugitive. (*Id.* ¶¶ 5-6). This assignment fell squarely within the duties of "to seek and execute arrest and search warrants supporting a federal t[ask] f[orce] under Title 18 authority" in Hutchens's Special Deputation Appointment. (Doc. 55-2). While executing the arrest warrant, with other TFOs, including at least one USMS employee, Hutchens wore a tactical vest with identifiable "Police" and "US Marshals" patches on the front and back. (Doc. 23-1 ¶ 10; Hutchens's Stmt., Doc. 59-3 at 14 ¶ 16-21). The Court also considered that the Acting U.S. Attorney for the Northern District of Georgia, in the context of the related civil case, certified that both Defendants "were acting within the scope of their employment as employees of the United States Government" at the time of the encounter with Robinson. (Doc. 1-6).

Despite this evidence, the State argues that Hutchens was not actually working under the direction of USMS as a TFO, but instead contends that he was working in his capacity as a state police officer. (Doc. 59 at 11). Yet, it offers no alternative to explain why several police officers, employed by different counties and municipalities, were working together to execute an arrest warrant in Fulton County, Georgia. Given the circumstances, it cannot reasonably be disputed that Hutchens, though he may be a state officer when not a TFO involved in SERFTF operations, was not acting under his authority as a Clayton County Sheriff's

11

deputy in executing the warrant but instead was acting as federal officer during his involvement in the shooting death of Robinson. *See United States v. Smith*, 743 F. App'x 943, 948 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 1206 (2019) (rejecting an argument that a local officer was not a federal officer because on the day of the incident the local officer was deputized as a Special Deputy U.S. Marshal and acted pursuant to his task force duties); *see also Ohio v. Meade*, No. 2:21-CV-5587, 2022 WL 486294, at *3 (S.D. Ohio Feb. 17, 2022) (finding that a local officer who was a member of a fugitive task force was both a state and federal officer because he was a Special Deputy U.S. Marshal, but the title did not remove his authority as a local officer).

## B.   The Defendants' Actions Were Taken "Under Color of Federal Office"

The second prong of the federal officer removal test requires Defendants to sufficiently allege they acted "under color of federal office." Federal courts credit the removing party's theory of the case for purposes of determining if a federal officer both acted "under color of office" and raised "a colorable federal defense." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999). The Supreme Court has articulated a "causal connection" test to determine whether a federal employee's acts were taken under the color of office. *Id*. at 431. Under this test, a federal officer is required to "show a nexus, 'causal connection' between the charged conduct and the asserted official authority." *Id*. (citations omitted); *see also Mesa*, 489 U.S. at

131 ("There must be a causal connection between the officer has done under asserted official authority and the state prosecution.") (citation omitted).

In 2011, Congress amended 28 U.S.C. § 1442(a) by "striking the phrase 'capacity for' and inserting 'capacity, for or relating to.'" Removal Clarification Act of 2011, Pub. L. 112-51, 125 Stat 545 (2011). Now, a federal officer can remove a criminal proceeding commenced in a State court where the criminal charges involve actions taken "in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals." 28 U.S.C. § 1442(a)(1). Circuit courts are split on whether Congress's 2011 amendment broadened the scope of acts that allows federal officers to remove a case to district court.[6] However, the Eleventh Circuit interprets the phrase "relating to" broadly, "requir[ing] only a causal 'connection' or 'association' between the act in question and the federal office," a standard that is "quite low." *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017) (quoting *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015)).

---

[6] *See Meade*, 2022 WL 486294, at *4 ("The Third, Fourth, Fifth, Seventh, and Eleventh Circuits have found that a federal officer is acting 'under color of his office' if his acts are 'alternatively *connected* or *associated*, with acts under color of federal office.' The Sixth, Second, Eighth, and Ninth Circuits, however, maintain that the amendment did not expand the definition of 'under color of office' and continue to apply the traditional causal connection test.").

Here, Defendants can easily satisfy the Eleventh Circuit's standard because both Heinze and Hutchens were TFOs with SERFTF and engaged in apprehending a fugitive when they fired at Robinson. *See generally Meade*, 2022 WL 486294, at *6 (finding that a fugitive task force officer was not acting under the color of federal law when he fatally shot the decedent because as a Special Deputy U.S. Marshal the officer was only authorized to pursue fugitives with active arrest warrants). Accordingly, these undisputed facts are sufficient to show a "causal connection or association" between Defendants' federal duties and the crimes of which they are accused.

The State counters that even if Heinze and Hutchens were federal officers executing an arrest warrant through a SERFTF operation, they were not acting under color of federal authority because TFOs are not authorized to execute state arrest warrants. (Doc. 8 at 18; Doc. 59 at 19). However, the Presidential Threat Protection Act of 2000 established task forces to locate and apprehend fugitives, and 28 U.S.C. § 566 authorizes USMS officers to "investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General." 28 U.S.C. § 566(e)(1)(B). Furthermore, "[n]umerous courts that have examined this issue have reasoned that members of these federal fugitive task forces do not lose the scope of their federal employment while they are executing state arrests warrants." *Deavers v. Martin*, No. 2:21-cv-00423, 2022 WL 4348474, at *5 (S.D. W.

14

Va. Sept. 19, 2022) (citing *King v. United States*, 917 F.3d 409, 433 (6th Cir. 2019), *rev'd on other grounds*, *Brownback v. King*, 141 S. Ct. 740 (2021); *Smith*, 743 F. App'x at 947-48; *United States v. Diamond*, 53 F.3d 249, 252 (9th Cir. 1995), *cert. denied*, 516 U.S. 925 (1995).

Additionally, the State dedicates a significant amount of its briefs contending that the Defendants could not be acting under color of federal authority because they violated the Fourth Amendment by entering the curtilage and breaching the door of a third-party residence in order to arrest Robinson. (Doc. 8 at 13; Doc. 59 at 13). The Court finds that this argument concerns the merits of the criminal charges against the Defendants and is irrelevant to whether the Defendants acted under the color of federal authority for removal purposes. *See e.g. Screws v. United States*, 325 U.S. 91, 111 (1945) ("Acts of officers who undertake to perform their official duties are included [under the color of law] whether they hew to the line of their authority or overstep it."); *United States v. House*, 684 F.3d 1173, 1200 (11th Cir. 2012) ("[A] law enforcement officer acts under the color of law when he acts with authority by virtue of his employment with the government, or the manner of his conduct . . . makes clear that he was asserting the authority granted [to] him and not acting in the role of a private person.") (citations and internal quotations omitted). Thus, at this juncture, the Court gives no weight to the State's Fourth Amendment violation arguments.

Finally, the Court finds that both Heinze and Hutchens fall in at least one of the categories outlined in 28 U.S.C. § 1442(c), which in relevant part, provides:

> Solely for purposes of determining the propriety of removal under subsection (a), a law enforcement officer, who is the defendant in a criminal prosecution, shall be deemed to have been acting under the color of his office if the officer--
>
> (1) protected an individual in the presence of the officer from a crime of violence;
>
> (2) provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or
>
> (3) prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime of violence that resulted in, or was likely to result in, death or serious bodily injury.

28 U.S.C. § 1442(c). The Court is unaware of any other federal case referencing this subsection of the federal removal statute but recognizes that this language, which was added in 2013, signals Congress's intent to delineate specific circumstances where law enforcement officers are deemed to be acting under the color of their office for removal purposes.

Here, the Defendants allege that they did not fire their weapons until Robinson pointed a gun at them, and that they fired their weapons to protect themselves and the other TFOs on the scene. (Doc. 1 at 4 and Doc. 55 at 4). Giving credit to the Defendants' theory of the case, Robinson committed a crime of violence (assault of an officer) when he pointed a gun at the officers. *See* 18 U.S.C.

§ 111 (applies to whoever "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties"). Additionally, the Eleventh Circuit has held that assault of an officer with a deadly weapon is a crime of violence. *United States v. Bates*, 960 F.3d 1278, 1286-87 (11th Cir. 2020).[7] Thus, the Court finds that the Defendants were acting under the color of their office, pursuant to § 1442(c).

The State contends that neither Heinze nor Hutchens fall within the ambit of § 1442(c) because they were the aggressors, and therefore not acting to protect another person from an act of violence. (Doc. 8 at 17 and Doc. 57 at 17). In support of this argument, the State points to O.C.G.A. § 16-3-21(b)(3), a self-defense statute. This argument is misplaced, however, because as discussed below, the Defendants' defense must rely on federal, not state law. *Acker*, 527 U.S. at 431 ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on *federal* law.") (emphasis added).

---

[7] At issue in *Bates* was the assault by use of a deadly weapon (firearm) of a TFO during an operation (conducted by USMS, SERFTF, and the Atlanta Police Department Gang Unit) to execute state arrest and search warrants. *See United States v. Bates*, No. 1:13-cr-501, 2017 WL 9439178, at * 1, *4 (June 1, 2017).

Therefore, whether the Defendants could raise the defense of self-defense under Georgia law is irrelevant.

### C.     The Defendants Have Asserted a Colorable Federal Defense

"[F]ederal officer removal must be predicated on the allegation of a colorable federal defense." *Mesa v. California*, 489 U.S. 121, 129 (1989). A colorable federal defense is necessary to assure a federal court has jurisdiction to hear the case. The Supreme Court, "[i]n construing the colorable federal defense requirement, [has] rejected a 'narrow, grudging interpretation' of the statute, recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Acker*, 527 U.S. at 431 (quoting *Willingham*, 395 U.S. at 407). Thus, the federal officer is not required to virtually "win his case before he can have it removed. *Id.* (quoting *Willingham*, 395 U.S. at 407). "[R]equiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the removal statute, . . . so would demanding an airtight case on the merits in order to show the required causal connection." *Id.* at 432 (quoting *Willingham*, 395 U.S. at 407).

In their Notices of Removal, both Heinze and Hutchens allege a federal defense of immunity from state prosecution under the Supremacy Clause of the United States Constitution. (Docs. 1 and 55). The State argues however, that Defendants have not raised a colorable federal defense because they violated the

Fourth Amendment to the United States Constitution while executing a state arrest warrant with other SERFTF officers. (Doc. 59 at 22).  Therefore, the State contends that neither Heinze nor Hutchens can maintain an immunity defense. But this is a question for another day. *See Acker*, 527 U.S. at 432 ("[R]equiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the removal statute."); *Texas v. Kleinert,* 855 F.3d 305, 313 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 642 (2018) *(*"Because the standard for federal officer removal tests only the plausibility of the officer's allegations, the State's arguments that removal is unavailable because, in its view, [the officer] will not ultimately prevail are unavailing."). The Defendants have alleged that they were acting as federal officers in accordance with federal law and therefore entitled to immunity. That is all that is required. The Court finds that both Heinze and Hutchens have raised a colorable federal defense of immunity under the Supremacy Clause and that removal of the entire case is warranted.[8]

## IV.    Conclusion

For the above reasons, the Court **DENIES** the State's Motions for Remand (Docs. 8 and 59). The Court also **DENIES** Defendant Heinze's Motion for a Writ of

---

[8] "It is well settled that if one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims." *Nadler v. Mann*, 921 F.2d 301, 306 n. 9 (11th Cir. 1992) (citing *Nat'l Audubon Soc'y. v. Dep't of Water & Power*, 496 F. Supp. 499, 509 (E.D. Cal. 1980)).

Habeas Corpus as **MOOT** (Doc. 5); **DENIES** Defendant Heinze's Motion to Stay (Doc. 43) as **MOOT**; **GRANTS** Defendant Heinze's Motion for Leave to File Excess Pages (Doc. 24); and **GRANTS** the State's Motion for Leave to File Surreply (Doc. 52).

Having determined that removal is permitted under 28 U.S.C. § 1455(b)(5), the Court hereby **NOTIFIES** the Superior Court of Fulton County, Georgia that pursuant to such code section it shall proceed no further with the prosecution of Defendants. The Clerk is **DIRECTED** to send a certified copy of this Order to the Superior Court of Fulton County, Georgia, referencing Criminal Action No. 21SC179517.

The Clerk is further **DIRECTED** to open a criminal action, listing the State of Georgia as the Government and Heinze and Hutchens as Defendants, docketing the indictment (Doc. 1-1), this Order, and a reference to prior proceedings in this civil action. The Clerk is further **DIRECTED** to terminate this civil case.

Counsel for the parties are **DIRECTED** to file appearances in the criminal action within (7) seven days of the date of this Order. Unless otherwise extended by the undersigned, the parties shall file any necessary pretrial motions within (14) fourteen days of the date of this Order pursuant to N.D. Ga. CrR. 12.1A, B and 16.1 and N.D. Ga. R. 5.1A, 7, 10 and 11.

A pretrial conference shall be held in this case on **November 15, 2022 at 10:00 a.m.** before the undersigned in Courtroom 2105, 21st Floor, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303. Counsel who will actually handle the trial of the case must be present. The defendants are also required to attend the pretrial conference. The pretrial conference may be continued only by order of the Court. Any consent continuance or motion to continue the pretrial conference shall be accompanied by a proposed order which includes the following language for the Court's consideration:

( )    The delay between the original and rescheduled  pretrial conferences shall be excluded from Speedy Trial Act calculations because the Court finds that the reason for the delay was for good cause and the interests of justice in granting the continuance outweigh the public's and the defendant's rights to a speedy trial. 18 U.S.C. § 3161, *et seq.*

( )    The delay between the original and rescheduled   pretrial  conferences  shall not be excluded for Speedy Trial Act purposes. 18 U.S.C. § 3161, *et seq.*

( )    The Court finds that due to the extensive discovery in this case, it was necessary to extend the time for the defendants to file pretrial motions, and accordingly, postpone the holding of the initial pretrial conference.  The Court finds that the interests of justice in continuing the pretrial motions deadline and in holding the pretrial conference substantially outweigh the interests of the public and defendants in the speedy resolution of this matter, and thus the Clerk is directed to count as excludable any delay occurring in

extending the motions dead line and the holding of the pretrial conference. 18 U.S.C. § 3161, *et seq*.

**SO ORDERED** this 25th day of October, 2022.

Victoria Marie Calvert
United States District Judge